# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

LAWRENCE K. LaPLANTE

No. 11-CR-10327-RGS

## DEFENDANT'S MOTION TO SUPPRESS
## ILLEGALLY OBTAINED EVIDENCE AND MOTION FOR A HEARING

Defendant, Lawrence LaPlante, respectfully moves to suppress the fruits of the unlawful search conducted at 7 Wellington Road in Wareham, Massachusetts on April 2, 2008. The search violated his constitutional rights under the Fourth Amendment.

Mr. LaPlante has been charged with one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). This charge stems from a search of 7 Wellington Road on April 2, 2008. This search was conducted pursuant to a warrant, but that warrant was not supported by probable cause, and the fruits of the search must be suppressed.

### Factual Background[1]

On April 1, 2008, Magistrate Judge Hillman issued a warrant permitting officers to search 7 Wellington Road, a one-story house in Wareham, Massachusetts. The warrant authorized officers to search for records related to a certain Internet Protocol address, Internet Service Provider accounts, ownership of computer equipment, and occupancy of the residence. Officers were also permitted to search for visual depictions of minors engaged in sexually

---

[1] This preliminary factual summary is based largely on police reports and other materials produced by the government in discovery. Mr. LaPlante recites this version of events to orient the Court, but does not concede that it constitutes competent evidence to justify the search.

explicit conduct, records related to the possession of such images, and all computer and video equipment and storage devices.

The warrant application was supported by an affidavit written by FBI Special Agent Sarah De Lair.  *See* attached Exhibit A.  The affidavit begins by setting out general background information stating that computers are often used to produce, distribute, and store child pornography.  The affidavit goes on to describe investigation that SA De Lair did not conduct. She describes an initiative by the Innocent Images Unit ("IIU") and Immigration and Customs Enforcement to gain access to websites suspected to contain child pornography.  According to the affidavit, this initiative revealed that many of these websites required users to pay for access, and often those payments were processed through a payment service called iWest.  The investigation did not find iWest associated with websites other than these commercial sites offering child pornography.

The affidavit then reveals that on October 22, 2007, Pavel Dudko, a Senior Detective for the Ministry of Internal Affairs in Belarus, sent the IIU an Excel spreadsheet with almost 33,000 entries.  The affidavit states that each entry on the spreadsheet represents a transaction conducted through iWest by someone in the United States.  Each entry includes the name, address, email address, telephone number, and payment information purportedly entered by the purchaser.  The spreadsheet also includes the date and time of the transaction, the alleged purchaser's IP address, and the website that the purchaser was trying to access.  The affidavit does not explain how Senior Detective Dudko, who once worked for the IIU, obtained this spreadsheet, how the spreadsheet was compiled, or who compiled it.  The affidavit describes the content, but not the origin of the spreadsheet.

According to the affidavit, the spreadsheet revealed that Lawrence K. LaPlante, at 7 Wellington Road in Onset, Massachusetts, tried to buy subscriptions to a number of websites, including one called Sexy Angels.  The spreadsheet also included a phone number, email address, IP address, and credit card number for these purchases.[2]  *See* attached Exhibit B.  The spreadsheet indicates that this individual made fifteen successful transactions through iWest between February 2, 2007 and July 26, 2007.  These transactions provided access to websites titled Underage Home, Vlolitz, Home Collection, Lolitaplay, Angels Girls, Sexy Angels, Kidz Index, HL package, CP Home Video, Reallola vol. 2, Desired Angels, and LS Dreams 6.  SA De Lair states that the names of these websites indicate that they contain child pornography.

Agents in the United States used this information to conduct some investigation.  A subpoena to Comcast revealed that the IP address associated with one of the iWest purchases described above was assigned to Lawrence LaPlante at 7 Wellington Road in Wareham at the time of the purchase.  On April 11, 2007, an agent purchased access to a website called Sexy Angels through iWest.  When the agent accessed this site, he found images of child pornography. The affidavit states that copies of those images were submitted along with the warrant application.  Images of child pornography taken from websites entitled CP Home Video and Underage Home were also included with the application.  According to the affidavit, the

---

[2]Exhibit B is a redacted portion of the Excel spreadsheet which was provided via a specific discovery request to the government.  Defense counsel is not certain that this is a copy of a portion of the original spreadsheet or if this a secondary document that was drafted after counsel's discovery request so it contains information the government alleges is attributable only to the defendant.  There is no information attached to this version of the original spreadsheet that indicates how the information it contains was gathered or how the sheet was created.  There is also no information attached related to any other individual who may have allegedly utilized the iWest site to attempt to access child pornography.

spreadsheet showed that Lawrence K. LaPlante at 7 Wellington Road in Onset purchased

subscriptions to each of these websites.  The affidavit states that this individual purchased access

to the Sexy Angels website on May 27, 2007 and July 9, 2007.  Agents also determined that the

Massachusetts Registry of Motor Vehicles lists a valid driver's licence for Lawrence LaPlante at

7 Wellington Road in Wareham (Onset).  A Postal Inspector determined that only one individual,

Lawrence K. LaPlante, received mail at 7 Wellington Road in Wareham.

Finally, SA De Lair's affidavit included information drawn from conversations with

experienced law enforcement officers that individuals who have "a persistent interest in child

pornography" usually keep images of child pornography in their homes.  She stated that she

believes that Mr. La Plante is such an individual based on the number of sites he purchased

access to and the prices that he paid for that access.

The warrant was issued on April 1, 2008, and agents searched 7 Wellington Road at 6:30

a.m. on April 2, 2008.  When officers arrived at this address, Mr. LaPlante answered the door.

During this search officers seized two computers, a cable modem, 70 DVDs, a thumb drive, three

hard drives, two notebooks, and papers with writing on them.  Officers also found plant matter

believed to be marijuana.  Also during the search a representative of the Board of Health

examined the house and condemned it.  After the search was completed, Wareham Police

arrested Mr. LaPlante for possession of marijuana.

Following the search, Mr. LaPlante moved to Florida.  The indictment charging Mr.

LaPlante in this case was issued on September 28, 2011, more than three years after the search.

Mr. LaPlante was arrested by FBI agents on September 30, 2011, in Florida.

## Argument

**I.     FRUITS OF IMPROPER SEARCH MUST BE SUPPRESSED
AS THE WARRANT WAS NOT SUPPORTED BY
PROBABLE CAUSE**

The search warrant for 7 Wellington Road was not based on probable cause.  Neither the

application nor the accompanying affidavit supported a finding that there was probable cause to

believe that a crime had been committed or that evidence of that crime would be found at that

address.  The fruits of this unlawful search must be suppressed.

**A.     Background Law**

The Fourth Amendment protects the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures" and provides that no

search "[w]arrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S.

Const. amend. IV.  Accordingly, a search warrant is only valid if it provides probable cause to

believe that a crime occurred and that evidence of a crime will be found in the place to be

searched.  "The test is whether the sworn allegations are sufficient 'to warrant a man of

reasonable caution in the believe that an offense has been or is being committed and that the

evidence bearing on that offense will be found in the place to be searched.'" *Untied States v.

Clark*, — F.3d —, 2012 WL 2877587 (1st Cir.) (quoting *Safford Unified Sch, Dist. No. 1 v.

Redding*, 557 U.S. 364, 370 (2009)).

A court reviewing an affidavit for probable cause should "make 'a practical, common-

sense' determination as to whether, 'given all the circumstances set forth in the affidavit . . .

there is a fair probability that contraband or evidence of a crime will be found in a particular

place.'"  *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011) (quoting *Illinois v. Gates*,

462 U.S. 213, 238 (1983)).  When, as here, an affidavit relies on information from a confidential

source, a court should "apply a 'nonexhaustive list of factors' to examine the affidavit's probable

cause showing," *Id.*, including:

> (1) whether the affidavit establishes the probable veracity and basis of knowledge
> of persons supplying hearsay information; (2) whether an informant's statements
> reflect firsthand knowledge; (3) whether some or all [of] the informant's factual
> statements were corroborated wherever reasonable and practicable ( e.g., through
> police surveillance); and (4) whether a law enforcement affiant assessed, from his
> professional standpoint, experience, and expertise, the probable significance of
> the informant's provided information.

*Id.* (internal quotation marks and citations omitted).

### B.    Information from Unnamed Source Did Not Supply Probable Cause

The investigation described by this affidavit began with and depended entirely upon

information supplied by an unknown and unnamed source–the Excel spreadsheet.  That the FBI

received this spreadsheet from a Belarusian law enforcement official is of no moment, because

the affidavit says nothing about how he obtained this spreadsheet, who gave it to him, or when or

how it was compiled.  The spreadsheet and its unknown creator play the familiar role of a

confidential informant in this case.  In effect, a confidential informant compiled the spreadsheet,

listing people the informant apparently believed had tried to access sites containing child

pornography, gave that information to the Belarusian establishment, who in turn passed the

information to the FBI.  Accordingly, the spreadsheet and its unidentified source must be

examined to determine whether they provide probable cause to support the warrant.

Applying the factors listed by the First Circuit in *Tiem Trinh*, it is clear that the affidavit

did not supply probable cause.  665 F.3d at 10.  The affidavit says nothing about the veracity and

basis of knowledge of the source of the spreadsheet.  Nor is it clear that the information in the

spreadsheet is based on first hand knowledge.  In fact, the affidavit does not identify the source

of the spreadsheet at all.  Further, the affidavit contains no statement that either the Belarusian or

American agents assessed the spreadsheet to determine its significance or reliability.  The

affidavit does not state whether other individuals listed on the spreadsheet had been investigated

and whether they had been found to have accessed websites containing child pornography.

Finally, agents did not corroborate anything other than innocent information contained in

the spreadsheet.  Prior to executing the search, officers were able to confirm that an individual

named Lawrence LaPlante lived at 7 Wellington Road and had been assigned a certain IP

address on a given date.  Those facts, however, do not suggest that a crime had occurred.  They

are innocent and easily observable facts.  "'An IP address is the unique address assigned to every

machine on the internet.'"  *United States v. Vazquez-Rivera*, 665 F.3d 351, 354 n.5 (1st Cir.

2011) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 13 n.1 (1st Cir. 2003)).  It is broadcast every

time an individual transmits or receives information through the internet; like a mailing address

for a computer, it is not private information and can be obtained by other internet users.  *See*

*United States v. Lewis*, 554 F.3d 208, 210 (1st Cir. 2009).  Agents corroborated only that a given

individual lived at a certain address and accessed the internet.  They were unable to corroborate

the key assumption in this case: not that the people on the spreadsheet existed, but that they had

attempted to purchase access to websites containing child pornography.  In the affidavit, SA De

Lair states that she believes that Mr. LaPlante was a person with a pervasive interest in child

pornography *because the spreadsheet says so*, yet her affidavit provides no reason to trust the

content of the spreadsheet.  As the entire affidavit plainly hinges on the reliability of the content

of the spreadsheet without establishing that reliability, it is clear that the warrant was not based

on probable cause.

### C.    Information in the Warrant was Stale

The affidavit also failed to provide probable cause to believe that evidence of a crime would be found at 7 Wellington Road because the information contained in the affidavit was stale.  The information was stale in two ways: first, the government had no relevant information about the content of the websites at the time Mr. LaPlante allegedly purchased access, and second, the government had no relevant information about what evidence might be found at 7 Wellington Road at the time of the search.  In assessing a staleness claim, the court "must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information."  *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008); *see also United States v. Reiner*, 500 F.3d 10, 15 (1st Cir. 2007).

According to the affidavit, the spreadsheet indicated that Mr. LaPlante made fifteen successful iWest transactions between February 27, 2007, and July 26, 2007.  Officers only attempted to view three of these websites.  An officer viewed the Sexy Angels website on April 16, 2007, but the affidavit alleges that Mr. LaPlante did not purchase access to this site until May 27, 2007 and July 9, 2007.  There is no date given for when agents obtained images from CP Home Video and Underage Home or for when Mr. LaPlante allegedly attempted to subscribe to these sites.  As the affidavit itself states, each of these websites was not "active for more than a few days at a time," although the web address provided to a subscriber might last longer.  Content on the internet is constantly updated and changed.  Especially given the transient nature of the websites at issue, it is not reasonable to believe that the website viewed by agents on one day was the same as the one seen by a subscriber to the same site more than a month later.  The

affidavit does not provide probable cause to believe that the websites at issue contained child pornography at the time that Mr. LaPlante purchased access.

Further, the affidavit does not provide probable cause to believe that evidence of alleged subscriptions made between February 27, 2007 and July 26, 2007 would be found at 7 Wellington Road on April 1, 2008, the date of the affidavit.  The affidavit states generally "individuals who have demonstrated a persistent interest in child pornography" usually keep copies of images of child pornography in their homes for many years.  It also states that computers often retain traces of internet activity for long periods of time.  However, the affidavit does not provide probable cause to believe that Mr. LaPlante was an individual with a persistent interest in child pornography.  As discussed above, the sole information in the affidavit connecting Mr. LaPlante to child pornography is the spreadsheet; a compilation of information from an entirely anonymous source.  Nor does the affidavit provide any particular reason to believe that any computer at 7 Wellington Road would have such information saved.  The computers in that house could, for instance, have been purchased in the many months between the alleged subscriptions and the search.

## II.    GOOD FAITH EXCEPTION DOES NOT APPLY

Nor should the evidence seized in this case be admitted under the good faith exception to the warrant requirement.  *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause" need not be suppressed.  *Id.* at 900. This exception is based on the theory that exclusion is appropriate only when its application would deter illegal police conduct rather than punish

clerical errors by judges.  *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

      In *Leon*, the Supreme Court made clear that an officer would not "manifest objective good faith in relying on a warrant base don an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)).  As detailed above, this affidavit was entirely lacking in probable cause, and no reasonable officer would have known that.  This affidavit was based on nothing other than a spreadsheet from an anonymous source, and agents were unable to corroborate anything other than the innocent facts contained in that document.  No reasonable officer could have believed that this affidavit provided probable cause to search 7 Wellington Road in Wareham, MA, and the *Leon* exception to the warrant requirement does not apply.

**III.**    **CONCLUSION**

      Because the warrant did not provide probable cause to search 7 Wellington Road, all fruits of that search must be suppressed.

                      **Respectfully submitted,**
                      **LAWRENCE LaPLANTE**
                      **By His Attorney,**

                      */s/ Oscar Cruz, Jr.*
                      **Oscar Cruz, Jr.**
                      **BBO# 630813**
                      **Federal Public Defender Office**
                      **51 Sleeper Street, 5th Floor**
                      **Boston, MA 02210**
                      **617-223-8061**

## Certificate of Service

I, Oscar Cruz, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 10, 2012.

/s/ Oscar Cruz, Jr.

**Oscar Cruz, Jr.**